Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Mattel, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTEL, INC.,<br><br>*Plaintiff*<br><br>v.<br><br>AUUISA STORE, INC. d/b/a WWW.DREAMBARBIEDOLL.COM d/b/a WWW.DREAMBARBIEDOLLS.COM d/b/a WWW.JINXXMAS.COM d/b/a WWW.MATTELBLACKFRIDAY.COM; SHENZHEN ALLISON TECHNOLOGY CO., LTD. d/b/a WWW.DREAMBARBIEDOLLS.COM d/b/a WWW.JINXXMAS.COM d/b/a WWW.MATTELBLACKFRIDAY.COM; SHENZHEN YANGDUAN TRADING CO., LTD. d/b/a WWW.DREAMBARBIEDOLL.COM d/b/a WWW.JINXXMAS.COM; WWW.DREAMBARBIEDOLL.COM; WWW.DREAMBARBIEDOLLS.COM; WWW.JINXXMAS.COM and WWW.MATTELBLACKFRIDAY.COM,<br><br>*Defendants* | CIVIL ACTION No.<br>**22-cv-561(PKC)** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE DEFENDANTS' ANSWER, FOR DEFAULT JUDGMENT AND A PERMANENT INJUNCTION AGAINST DEFENDANTS**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.   PROCEDURAL HISTORY .................................................................................. 1

III.   STATEMENT OF FACTS .................................................................................... 2

IV.   ARGUMENT ........................................................................................................ 4

    A.   DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANTS ........... 4

        a.   Defendants' Answer Should Be Stricken ................................................ 4

        b.   Plaintiff Is Entitled to a Permanent Injunction ................................................ 6

        c.   Defendants Willfully Infringed Plaintiff's Mattel Marks And Barbie Marks .............. 10

        d.   Plaintiff is Entitled to Heightened Statutory Damages .................................. 12

        e.   Defendants Engaged in Cybersquatting Through the Registration and Use of the Infringing Domains ................................................................................................. 18

        f.   Plaintiff is Entitled to a Transfer of the Infringing Domain Names ............................ 19

    B.   PLAINTIFF IS ENTITLED TO SERVE RESTRAINING NOTICES PURSUANT TO CPLR § 5222 and to an Asset Turnover Pursuant to CPLR § 5225 ........................................ 20

V.   CONCLUSION ..................................................................................................... 23

i

# TABLE OF AUTHORITIES

## Cases

*Allee v. Medrano*, 416 U.S. 802 (1974) ...................................................................... 7

*Allstar Marketing Group, LLC v. 158*, No. 19-cv-4101 (GHW), 2019 U.S. Dist. LEXIS 141913
(S.D.N.Y. Aug. 20, 2019) ................................................................................... 20

*All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613 (S.D.N.Y. 2011) ............. 17

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist.
LEXIS 125068, (S.D.N.Y. Aug. 8, 2017) .......................................................... 21, 22

*Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) .............................................. 11

*AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150 (S.D.N.Y. Aug.
2, 2016) .................................................................................................................. 14

*Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849 (2d Cir. 1995) ...................................... 11

*Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449 (E.D.N.Y.
July 5, 2007) .......................................................................................................... 20

*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2d Cir. 2011) ..................... 4, 11

*Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426 (S.D.N.Y. 2012) ..................... 12

*Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842
(S.D.N.Y. Sep. 2, 2011) ........................................................................................ 11

*Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005 (S.D.N.Y. June 7, 2014) ........................... 13

*Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 168 (2d Cir. 2016) ................ 12

*Cruz v. TD Bank, N.A.*, 711 F.3d 261 (2d Cir. 2013) ................................................................ 21

*CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS
23014 (E.D.N.Y. Feb. 25, 2016) .......................................................................... 22

*Dawson v. Krolikowski*, 530 N.Y.S.2d 931 (Sup. Ct. 1988) ..................................................... 20

*E. Freight Ways, Inc. v. E. Motor Freight, Inc.*, No. 02-cv-3138 (LTS), 2003 U.S. Dist. LEXIS
9683 (S.D.N.Y. June 11, 2003) .............................................................................. 4

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ................................................. 6

*Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599-600
(S.D.N.Y. 2010) ..................................................................................................... 10

*Ferrara v. PJF Trucking LLC*, 13-CV-7191 (JS)(AKT), 2014 U.S. Dist. LEXIS 133723
(E.D.N.Y. Sept. 22, 2014) ....................................................................................... 5

*Finkel v. Romanowicz*, 577 F.3d 79 (2d Cir. 2009) .................................................................. 11

*Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110 (2d Cir. 1986) ....................... 14

*Gray v. Sanders*, 372 U.S. 368 (1963) ....................................................................................... 7

*Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831
(S.D.N.Y. Jan. 20, 2010) ....................................................................................... 18

*Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228 (3d Cir. 2003) ................................................... 11

*Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511 (S.D.N.Y. 2004) .................. 11

*Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619 (S.D.N.Y. 2011) ..... 9

*Ideavillage Prods. Corp. v. 711 Market, et al.*, No. 18-cv-7832-JMF (S.D.N.Y. Dec. 12, 2018)
.............................................................................................................................. 18, 23

*Ideavillage Prods. Corp. v. Aarhus*, No. 1:18-cv-02739 (JGK) (SDA), 2019 U.S. Dist. LEXIS
78914, at *13 (S.D.N.Y. May 7, 2019) ................................................................... 10

*Ideavillage Prods. Corp. v. Liuzhou Weimao Mobile Access. Co.*, No. 20 CV 4997-LTS, 2021 U.S. Dist. LEXIS 153952, at (S.D.N.Y. Aug. 16, 2021) .......................................................... 19

*Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc.*, No. 07-cv-6865 (LTS) (GWG), 2007 U.S. Dist. LEXIS 93420, (S.D.N.Y. Dec. 19, 2007).......................................................................... 5

*Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920 (S.D.N.Y. Mar. 13, 1995)................................................................................................................................ 21

*Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) ..................................................... 11

*Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999) ................................................ 10

*Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533 (2009) ............................................................. 23

*Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt.*, No. 04-cv-2293 (JFB), 2007 U.S. Dist. LEXIS 1404, 2007 WL 74304 (E.D.N.Y. Jan. 8, 2007) ................................... 10

*Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc.*, 192 F.3d 337 (2d Cir. 1999) ................... 12

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567 (S.D.N.Y. 2002) ............... 17

*Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501 (S.D.N.Y. 2009) ................................................................................................................................... 14, 15

*Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR (S.D.N.Y. Dec. 17, 2018) ....................... 18, 23

*Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 (S.D.N.Y. May 9, 2011) ........................ 8

*Mintz v. Mktg. Cohorts, LLC*, No. 18-CV-4159, 2019 U.S. Dist. LEXIS 124374, 2019 WL 3337896 (E.D.N.Y. July 25, 2019) ........................................................................................... 19

*Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120 (E.D.N.Y. 2010) ................................ 22

*Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245 (E.D.N.Y. 2010)............... 9, 10

*Moose Toys Pty Ltd., et al. v. 963, et al.,* No. 18-cv-2187-VEC (S.D.N.Y. Nov. 30, 2018)........ 23

*N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250 (2d Cir. 1992).......................................... 10

*Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 U.S. Dist. LEXIS 71942 (S.D.N.Y. June 2, 2016) ................................................................................... 4

*Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543 (S.D.N.Y. Feb. 27, 2006) ...................................................................................................... 16

*Nike, Inc. v. Wu*, 349 F. Supp. 3d 310 (S.D.N.Y. 2018) .............................................................. 18

*Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579 (S.D.N.Y. 2012) ............................ 22

*NY City Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 9

*Off-White LLC v. 2017pingan, et al.*, 20-cv-5191 (KPF) Dkt. 40 (S.D.N.Y. May 7, 2021) ........ 20

*Off-White LLC v. 5HK5584*, No. 19-cv-672 (RA) (JLC), 2020 U.S. Dist. LEXIS 58926 (S.D.N.Y. Apr. 3, 2020).......................................................................................................... 12

*Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG (S.D.N.Y. Jan. 17, 2019) ........................................................................................................................................ 23

*Ontel Prods. Corp. v. Airbrushpainting Makeup Store*, 17-cv-871 (KBF), 2017 Dist. LEXIS 221489 (S.D.N.Y. June 29, 2017)............................................................................................ 17

*Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77 (2d Cir. 1996) ................................................... 21

*Pearson Educ., Inc. v. Vegara*, No. 09 Civ. 6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597 (S.D.N.Y. Sept. 27, 2010) ......................................................................................................... 9

*Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201 (S.D.N.Y. Nov. 7, 2007) ......................................................................... 17

*Prime Publishers, Inc. v. American-Republican, Inc.*, 160 F. Supp. 2d 266 (D. Conn. 2001)..... 19

*Really Good Stuff, LLC v. BAP Inv'rs, L.C.*, 813 Fed. App'x 39, 44 (2d Cir. 2020)..................... 8

*Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054 (S.D.N.Y. Apr. 26, 2005) ......................................................................................................................... 17

*Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054 (S.D.N.Y. June 5, 2002) ..................................................................................... 18

*S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063 (S.D.N.Y. Oct. 6, 2010) ...................................................................................... 22

Salvatore Ferragamo S.p.A. v. Does 1-56, No. 18-cv-12069 (JPO), 2020 U.S. Dist. LEXIS 27582, 2020 WL 774237, at *3 (S.D.N.Y. Feb. 18, 2020) ............................................. 18

*Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413 (S.D.N.Y. 2018) ........................... 18

*Steele v. Bell*, 2014 U.S. Dist. LEXIS 44976 (S.D.N.Y. Mar. 3, 2014) ....................................... 6

*Tapestry, Inc., et al. v. baoqingtianff, et al.,* No. 18-cv-7650-PAE (S.D.N.Y. Jan. 8, 2019) . 18, 23

*Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123 (S.D.N.Y, 2003) ............................................... 10

*Tiffany (NJ) LLC v. Dong*, 2013 U.S. Dist. LEXIS 114986 (S.D.N.Y. Aug. 9, 2013) ................ 20

*Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647 (S.D.N.Y. Sep. 22, 2015) ............................................................................................ 18

*United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) ....... 8

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) ............................... 8

*Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241 (2d Cir. 2004) ............................... 6

*Wow Virtual Reality, Inc. v. BIENBEST, et al.,* No. 18-cv-3305-VEC (S.D.N.Y. Dec. 5, 2018) 23

*WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019) ................................................................................................. 20

**Statutes**

15 U.S.C. § 1116 ............................................................................................................ 6

15 U.S.C. § 1117 ...................................................................................................... 13, 16

15 U.S.C. § 1125(d)(1)(A) ............................................................................................ 18

15 U.S.C. § 1125(d)(1)(C). ........................................................................................... 19

17 U.S.C. § 502 .............................................................................................................. 6

17 U.S.C. § 504(c) ....................................................................................................... 12

28 U.S.C. § 1961 .......................................................................................................... 15

Fed. R. Civ. P. 55 ....................................................................................................... 1, 4

Fed. R. Civ. P. 69 ......................................................................................................... 20

N.Y. C.P.L.R. § 5201 ................................................................................................... 22

N.Y. C.P.L.R. § 5222 ............................................................................................... 20, 21

N.Y. C.P.L.R. § 5225 ............................................................................................... 21, 22

N.Y. C.P.L.R. §§ 5201-5253 ........................................................................................ 21

## GLOSSARY

| Term | Definition | Docket Entry Number |
|---|---|---|
| **Plaintiff or Mattel** | Mattel, Inc. | N/A |
| **Defendants** | Auuisa Store, Inc. d/b/a www.dreambarbiedoll.com d/b/a www.dreambarbiedolls.com d/b/a www.jinxxmas.com d/b/a www.mattelblackfriday.com; Shenzhen Allison Technology Co., Ltd. d/b/a www.dreambarbiedolls.com d/b/a www.jinxxmas.com d/b/a www.mattelblackfriday.com; Shenzhen Yangduan Trading Co., Ltd. d/b/a www.dreambarbiedoll.com d/b/a www.jinxxmas.com; www.dreambarbiedoll.com; www.dreambarbiedolls.com; www.jinxxmas.com and www.mattelblackfriday.com | N/A |
| **Sealing Order** | Order to Seal File entered on January 11, 2022 | 1 |
| **Complaint** | Plaintiff's Complaint filed on January 21, 2022 | 6 |
| **Application** | Plaintiff's *Ex Parte* Application for: 1) a temporary restraining order; 2) an order restraining Defendants' Website (as defined *infra*) and Defendants; Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery | 18-21 |
| **Moore Dec.** | Declaration of Michael Moore in Support of Plaintiff's Application | 21 |
| **Ioannou Dec.** | Declaration of Karena K. Ioannou in Support of Plaintiff's Application | 20 |
| **TRO** | 1) Temporary Restraining Order; 2) Order Restraining Defendants' Website and Defendants' Assets with the Financial Institutions; 3) Order to Show Cause Why a Preliminary Injunction Should Not Issue; 4) Order Authorizing Bifurcated and Alternative Service; and 5) Order Authorizing Expedited Discovery entered on January 25, 2022 | 22 |
| **PI Show Cause Hearing** | February 15, 2022 hearing to show cause why a preliminary injunction should not issue | N/A |
| **PI Order** | February 15, 2022 Preliminary Injunction Order | 5 |
| **Mattel Products** | Plaintiff's children's toys, games, playthings, and other products, and/or its iconic sub-brands, | N/A |

iv

| | including, but not limited to: Barbie, UNO, Thomas & Friends, Hot Wheels, Power Wheels, American Girl and Fisher-Price | |
|---|---|---|
| **Barbie** | An iconic and world-renowned fashion doll | N/A |
| **Barbie Products** | A vast range of commercial products including dolls, playhouses, toy cars, books, movies, games, puzzles and clothing sold under the Barbie brand | N/A |
| **Mattel Marks** | U.S. Trademark Registration Nos.: 3,165,874 for "MATTEL" for "retail store services for a full line of toys and children's products" in Class 35; 4,106,374 for "MATTEL" for "computerized online ordering services in the field of toys, games and playthings, electronic commerce services, namely, providing information about products via telecommunication networks for advertising and sales purposes." in Class 35; and 898,209 for MATTEL for "toys" in Class 28. | N/A |
| **Barbie Marks** | U.S. Trademark Registration Nos.: 689,055 for "BARBIE" for a variety of goods in Class 28; 2,678,386 for "BARBIE" for a variety of goods in Classes 3, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28 and 30; 2,087,842 for "*Barbie*" for a variety of goods in Class 28; 2,639,971 for "*Barbie*" for a variety of goods in Class 25 and 28; 774,892 for "SKIPPER" for a variety of goods in Class 28; 2,931,614 for "CHELSEA" for a variety of goods in Class 28; 3,083,593 for "BARBIE COLLECTOR" for a variety of goods in Classes 28 and 41; 3,189,837 for "PINK LABEL" for a variety of goods in Class 28; 3,702,525 for "FASHIONISTAS" for goods in Class 28; 5,214,711 for "YOU CAN BE ANYTHING" for a variety of goods in Class 28; 5,233,292 for "BARBIE DREAMTOPIA" for a variety of goods in Class 28; 5,449,612 for "BABYSITTERS INC." for a variety of goods in Class 28; and 6,097,805 for "COLOR REVEAL" for a variety of goods in Class 28 | N/A |
| **Barbie Works** | U.S. Copyright Reg. Nos.: VA 2-038-351, covering the 2017 Barbie Packaging Branding for Consumer | N/A |

| | | |
|---|---|---|
| | Products; VA 2-135-686, covering the 2016 Catalog Fall Mattel; and VA 945-179 covering CEO BARBIE | |
| **Plaintiff's Website** | Barbie's fully interactive website, located at http://www.barbie.mattel.com and Mattel's fully interactive website, located at http://www.mattel.com | N/A |
| **Counterfeit Products** | Defendants' products advertised, offered for sale and/or sold by Defendants via Defendants' Websites (as defined *infra*), which use the Barbie Marks, Mattel Marks and/or Barbie Works and/or products in packaging and/or containing labels bearing the Barbie Marks, Mattel Marks and/or Barbie Works, and/or bearing or used in connection with marks and/or artwork that are confusingly or substantially similar to the Barbie Marks, Mattel Marks and/or Barbie Works and/or products that are identical or confusingly or substantially similar to the Barbie Products | N/A |
| **Defendant's Website** | Any and all fully interactive websites held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them, that use the Barbie Marks and Mattel Marks, that they operate to communicate with consumers regarding their Counterfeit Products and/or through which consumers purchase Counterfeit Products for delivery in the U.S., including, without limitation, Defendants' websites located at www.mattelblackfriday.com; www.dreambarbiedoll.com; www.dreambarbiedolls.com and www.jinxxmas.com along with any and all of the domain names associated therewith, including the Infringing Domain Names | N/A |
| **Infringing Listings** | Defendants' listings for Counterfeit Products | N/A |
| **Infringing Domain Names** | www.mattelblackfriday.com, www.dreambarbiedoll.com and www.dreambarbiedolls.com | N/A |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) | N/A |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by Defendants or any of Defendant's | N/A |

| | Website (whether said accounts are located in the U.S. or abroad) | |
|---|---|---|
| **Financial Institutions** | Any banks, financial institutions, credit card companies and payment processing agencies, such as PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong") and other companies or agencies that engage in the processing or transfer of money and/or real or personal property of Defendants | N/A |
| **Third Party Service Providers** | Any third party providing services in connection with Defendants' Counterfeit Products and/or Defendants' Websites, including, without limitation, Internet Service Providers ("ISP"), back-end service providers, web designers, merchant account providers, website hosts such as Cloudflare, domain name registrars, such as NameSilo, domain name registries, shipping, fulfillment and warehousing service providers, such as Return Warehouse located at 147-03 182 St, Jamaica New York 11413 | N/A |
| **Cloudflare** | Cloudflare, Inc., with an address of 101 Townsend Street, San Francisco, California 94107, and any and all affiliated companies, which operate a cloud-based web infrastructure platform, available at www.cloudflare.com, that enables capabilities to host static websites on a content delivery network | N/A |
| **NameSilo** | NameSilo, LLC, with an address of 8825 N. 23rd Ave Suite 100 Phoenix, Arizona 85021, and any and all affiliated companies, which operate an ICANN accredited domain name registrar and web hosting company, available at www.namesilo.com, that allows consumers to register domain names and create websites | N/A |
| **Defendants' Frozen Assets** | Defendants' Assets from Defendants' Financial Accounts that were and/or are attached and frozen or restrained pursuant to the TRO and/or PI Order, or which are attached and frozen or restrained pursuant to any future order entered by the Court in this Action | N/A |
| **Plaintiff's Motion for Default Judgment** | Plaintiff's Motion to Strike Defendants' Answer, for Default Judgment and a Permanent Injunction Against Defendant filed on September 28, 2022 | TBD |
| **Futterman Aff.** | Affidavit of Danielle S. Futterman in Support of Plaintiff's Motion for Default Judgment | TBD |

# I.    <u>INTRODUCTION</u>[1]

In accordance with the Court's Individual Rules, Local Civil Rule 55.2(b) and Federal Rule of Civil Procedure 55(b)(2), Plaintiff respectfully submits that entry of default judgment against Defendants is appropriate and seeks the following relief against Defendants: 1) that Defendants' Answer be stricken; 2) that a final judgment and permanent injunction by default be entered; 3) an award of statutory damages in the total amount of $2,000,000.00 against Defendants, jointly and severally, pursuant to 15 U.S.C. § 1117(c), plus post-judgment interest calculated pursuant to the statutory rate; 4) an order transferring Defendants' Infringing Domain Names to Plaintiff, pursuant to 15 U.S.C. § 1125(d)(1)(C); and 5) service of an asset restraining notice pursuant to CPLR § 5222.[2]

# II.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed the Complaint and Application on January 21, 2022. (Futterman Aff., ¶ 9). Subsequently, the Court entered the TRO on January 25, 2022. *Id.* at ¶ 11.  The TRO specifically authorized service by electronic means.[3] *Id*. at ¶ 13. On December 1, 2021, pursuant to the TRO, Plaintiff served Defendants with the Summons, Complaint, TRO and all papers filed in support of Plaintiff's Application.  *Id*. at ¶ 14.  On February 15, 2022, the Court held the PI Show Cause Hearing, at which Defendants failed to appear. *Id*. at ¶ 16.  On the same day, the Court entered the

---

[1] Where a defined term is referenced herein and not defined herein, the defined term should be understood as it is defined in the Glossary.

[2] Through this Motion for Default Judgment, in addition to permanent injunctive relief, Plaintiff only seeks monetary damages for its First, Second and Fourth Causes of Action. Plaintiff does not seek monetary relief in connection with the remaining causes of action plead in the Complaint or attorneys' fees.

[3] The TRO specifically ordered that service shall be made on Defendant and deemed effective as to Defendant if it was completed by the following means: delivery of: (i) PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking the TRO, or (ii) a link to a secure website (including NutStore, a large mail link created through Rmail.com and via website publication through a specific page dedicated to this lawsuit accessible through ipcounselorslawsuit.com) where Defendants will be able to download PDF copies of the TRO together with the Summons and Complaint, and all papers filed in support of Plaintiff's Application seeking the TRO to Defendant's e-mail address, ausiaa@outlook.com, auuisa@outlook.com, ip@whosebilling.com, silentyinging@outlook.com, priority13@hotmail.com and mulody8@gmail.com.

Preliminary Injunction Order against Defendants mirroring the terms of the TRO and extending through the pendency of the action. *Id*. at ¶ 17.

Defendants' deadline to answer or otherwise move with respect to the Complaint was February 24, 2022; however, at the time Defendants failed to file an Answer or otherwise appear in the action. *Id*. at ¶ 15. In light of Defendants' default, on March 1, 2022, Plaintiff filed an application for a Clerk's Certificate of Default against Defendants and on March 2, 2022, the Clerk of the Court entered a Certificate of Default against Defendants.[4] *Id*. at ¶¶ 19-20, Ex. D. On March 8, 2022, Plaintiff filed a Motion for Default Judgment. *Id*. at ¶ 21. Thereafter, counsel for Defendants filed a motion for an extension of time to file an Answer and subsequently filed an Answer to the Complaint. *Id*. at ¶¶ 22-23. On June 1, 2022, the Court entered a Civil Case Management Plan and Scheduling Order, however, Defendants failed to comply with all of the deadlines set forth therein, and counsel for Defendants subsequently filed a motion to withdraw. *Id*. at ¶¶ 24-26. By order dated August 17, 2022, the Court granted Defendants' counsel's request to withdraw as counsel and entered an order directing Defendants to retain counsel by September 9, 2022 and to appear at a hearing on September 12, 2022. *Id*. at ¶ 27. Defendants, however, failed to retain counsel and failed to appear at the September 12, 2022 hearing. *Id*. at ¶ 28. Accordingly, Plaintiff respectfully submits the instant Motion for Default Judgment.

### III.  <u>STATEMENT OF FACTS</u>

Mattel, through its family of companies, is a leading designer, developer, marketer, manufacturer and distributor of its well-known Mattel Products, including children's toys and games offered under some of America's most iconic and influential sub-brands, such as Barbie,

---

[4] Plaintiff did not file a new request for entry of default because Defendants' Answer has not yet been stricken and in Epstein Drangel's experience, the Clerk's office would reject a new request for entry of default as there is an Answer on the docket. If necessary, however, Plaintiff can file a new request for entry of default.

UNO, Thomas & Friends, Hot Wheels, Power Wheels, American Girl and Fisher-Price. (Moore Dec., ¶ 3). Mattel sells its Mattel Products worldwide through major retailers, quality toy stores and online marketplaces, including, but not limited to: Wal-Mart, Target Stores, Walgreens, Amazon and many others. *Id.* at ¶ 4. Mattel and its Mattel Products have been consistently recognized as leaders in the toy and entertainment categories. For example, in 2021, Mattel was identified as one of TIME's 100 Most Influential Companies. *Id.* at ¶¶ 6-7.

One of Mattel's most popular and successful brands is Barbie, an iconic and world-renowned fashion doll ("Barbie Brand"). *Id.* at ¶ 8. While Plaintiff has gained significant common law trademark and other rights in its Mattel Marks, Barbie Marks, and Mattel Products through its and/or its predecessor's use, advertising and promotion, Plaintiff has also protected its valuable trademark rights by both acquiring and obtaining federal trademark registrations. *Id.* at ¶¶ 16-18, Ex. C.

Upon information and belief, Defendants are located in China but conduct business in the U.S., including within this judicial district, and other countries by means of Defendants' Websites. (*See* Complaint, Ex. D).[5] Through Defendants' Websites, which prominently feature one or more of the Mattel Marks, Barbie Marks and/or Barbie Works, Defendants offer for sale and/or sell Counterfeit Products, and market, distribute and ship the same to consumers throughout the world, including those in New York. (Ioannou Dec., ¶¶ 5-10, Exs. A-B; Moore Dec., ¶ 35-36, Ex. E). Without Plaintiff's authorization or consent, Defendants have manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale and/or sold Counterfeit Products to consumers located in the U.S., including New York, through Defendants' Websites; have used one or more of the Mattel Marks, Barbie Marks, or marks confusingly similar thereto,

---

[5] Exhibit D to the Complaint (Dkt. 6) is the same as Exhibit A to the Ioannou Dec. (Dkt. 20).

on Defendants' Websites; and/or have used one or more of the Mattel Marks and Barbie Marks in their entirety in connection with the Infringing Domain Names.  (Moore Dec., ¶¶ 35-36, Ex. E).

## IV.     <u>ARGUMENT</u>

### A.  DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST DEFENDANTS

#### a.  Defendants' Answer Should Be Stricken

Federal Rule of Civil Procedure 55(b) provides for a court-ordered default judgment following the entry of default by the court clerk under Rule 55(a).  "In determining whether to grant a motion for default judgment, a court within this district considers three factors: '(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the nondefaulting party would suffer as a result of the denial of the motion for default judgment.'" *Nespresso USA, Inc. v. Afr. Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 U.S. Dist. LEXIS 71942, *6 (S.D.N.Y. June 2, 2016) (internal citations omitted).  Once the foregoing factors have been established, the court "must determine whether the plaintiff has pleaded facts supported by evidence sufficient to establish the defendant's liability with respect to each cause of action".  *Id.*  "It is an ancient common law axiom that a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011).

"Even if a party appears in a case, if that party by its subsequent actions plainly abandons its defense, including by violating Court orders, such actions can warrant the judgment of default." *E. Freight Ways, Inc. v. E. Motor Freight, Inc.*, No. 02-cv-3138 (LTS), 2003 U.S. Dist. LEXIS 9683, at *2 (S.D.N.Y. June 11, 2003).  Here, while Defendants filed an Answer, they have since failed to comply with Court orders to provide discovery, retain counsel and otherwise participate in this action, which indicates that Defendants' conduct is willful.  (Futterman Aff., ¶¶ 25-29); *Trs. Of the Paper Prods. Misc. Chauffers, Warehousemen & Helpers Union Local 27 Welfare Tr. Fund*

*& Pension v. J & J Int'l Logistics, Corp.*, No 12-cv-1475, 2013 U.S. Dist. LEXIS 144097, at *2 (E.D.N.Y. Oct. 4, 2013) ("The court may enter a default judgment when the disobedient party has 9i77ut7r]failed to comply with a court order due to willfulness, bad faith, or any fault, including gross negligence." (citations omitted)).  Furthermore, "where corporate defendants have been ordered to retain counsel and fail to do so, a sanction in the form of striking those defendants' Answers is appropriate." *Allstate Ins. Co. v. Yehudian*, No. 14-cv-4826 (JS), 2018 U.S. Dist. LEXIS 27129, at *4 (E.D.N.Y. Feb. 15, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 59147 (E.D.N.Y. Mar. 31, 2018).  Moreover, while Defendants filed an Answer (Dkt. 36), they have not set forth any meritorious defenses and due to Defendants' failure to comply with Court orders and retain counsel, Plaintiff now respectfully requests that Defendants' Answer be stricken.

In addition, denying Plaintiff's Motion for Default would be highly prejudicial to Plaintiff since Plaintiff would otherwise be left without any recourse. *See, e.g. Ferrara v. PJF Trucking LLC*, 13-CV-7191 (JS)(AKT), 2014 U.S. Dist. LEXIS 133723, at *7 (E.D.N.Y. Sept. 22, 2014) ("Denying this motion would be prejudicial to Plaintiffs as there are no additional steps available to secure relief in this Court" (internal quotation marks omitted)).  Moreover, Plaintiff has adduced more than sufficient allegations, supported by evidence, to establish all of its claims in connection with Plaintiff's Application, and as fully briefed in Plaintiff's Application and as the Court already implicitly acknowledged, the Court has personal jurisdiction over Defendants.  *See* TRO and PI Order. Therefore, Plaintiff respectfully submits that the Court should enter default judgment against the Defendants, and Plaintiff's request for damages, as set forth herein, is reasonable and supported by evidence.

### b. Plaintiff Is Entitled to a Permanent Injunction

Plaintiff respectfully requests that the Court permanently enjoin Defendants from any further counterfeiting and/or infringement of Plaintiff's Mattel Marks and Barbie Marks for the reasons detailed herein, as well as the Court's earlier findings on the same issues in its entrance of the TRO and PI Order.

A district court has authority under the Lanham Act to grant injunctive relief to prevent further violations of a plaintiff's trademarks. *See* 15 U.S.C. § 1116. Here, since Defendants' default constitutes an admission of liability and Plaintiff successfully established its claims for trademark infringement and counterfeiting, Plaintiff respectfully submits that a permanent injunction against Defendants should be entered.[6] *See, e.g., Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004) ("a default is an admission of all well-pleaded allegations").

Specifically, a permanent injunction may be granted where a plaintiff demonstrates that it has succeeded on the merits and: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In intellectual property actions, permanent injunctions are normally granted when there is "a threat of continuing violations." *Steele v. Bell*, 11-cv-9343 (RA) (RLE), 2014 U.S. Dist. LEXIS 44976, at *22 (S.D.N.Y. Mar. 3, 2014). Here, as pleaded in the Complaint and supported by the uncontroverted evidence,

---

[6] As detailed at length in the Application and omitted here for brevity, Plaintiff has demonstrated success on its uncontroverted claims for trademark counterfeiting and infringement against Defendants. *See* Application; *see also* TRO and PI Order.

Defendants infringed Plaintiff's Mattel Marks and Barbie Marks by, *inter alia*, willfully and knowingly advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products through Defendants' Websites; using one or more of Plaintiff's Mattel Marks, Barbie Marks or marks confusingly similar thereto, on Defendants' Websites; and/or using one or more of Plaintiff's Mattel Marks, Barbie Marks, or marks that are confusingly similar thereto, in connection with the Infringing Domain Names. *See* Complaint, Ex. D.  By engaging in such acts, Defendants have thereby caused irreparable harm to Plaintiff.  While the Third Party Service Providers' compliance with the TRO and PI Order—insofar as such compliance has resulted in the suspension of Defendants' Websites—has prevented further sales of Counterfeit Products by Defendants on Defendants' Websites that have been identified by Plaintiff during the pendency of this action, there remains a serious possibility that Defendants will continue to infringe Plaintiff's intellectual property rights should such restraints be lifted.  *Allee v. Medrano*, 416 U.S. 802, 810-11 (1974) ("It is settled that an action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to '[their] old ways.'") (citing *Gray v. Sanders*, 372 U.S. 368, 376 (1963)) (internal quotation marks omitted).

On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law, and amended the text of 15 U.S.C. § 1116(a) to codify a rebuttable presumption of irreparable harm.[7]  Plaintiff

---

[7] The Act reads, in relevant part, as follows:

> The several courts vested with jurisdiction of civil actions arising under this chapter shall have power to grant injunctions…to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title. ***A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the***

respectfully submits that it is entitled to the presumption of irreparable harm. However, courts have issued permanent injunctions when intellectual property rights holders have shown a potential loss of goodwill and control over their trademark(s). *See, e.g., United States Polo Ass'n v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515 (S.D.N.Y. 2011) (granting request for permanent injunction, finding irreparable harm where likelihood of confusion as to source and likelihood of injury to reputation and goodwill were shown); *see also Really Good Stuff, LLC v. BAP Inv'rs, L.C.,* 813 Fed. App'x 39, 44 (2d Cir. 2020) ("[t]he loss of reputation and goodwill constitutes irreparable harm"). Here, not only has Plaintiff suffered lost profits as a result of Defendants' competing, substandard Counterfeit Products, but Defendants' actions have caused unquantifiable irreparable harm to the goodwill and reputation associated with Plaintiff, its Mattel Marks, Barbie Marks and Mattel Products. (Moore Dec., ¶ 33). Further, because of Defendants' failure to comply with the Court's orders in this action, Plaintiff was unable to obtain complete and accurate information regarding the actual profits derived from their sales of Counterfeit Products, making Plaintiff's actual damages effectively impossible to measure. (Futterman Aff., ¶¶ 24-25; 33-36). *See*, *e.g., Mint, Inc. v. Iddi Amad*, 2011 U.S. Dist. LEXIS 49813 at *10 (S.D.N.Y. May 9, 2011) (finding irreparable harm where "determining the amount of damages from [defendant's] infringing conduct [is] especially difficult, if not impossible").

Given such injury to Plaintiff's goodwill and reputations, as well as the absence in the record of any assurance against Defendant's continued violation of Plaintiff's Mattel Marks and Barbie Marks, monetary damages alone are inadequate to compensate Plaintiff for the damage it

---

*merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order*.

*See Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702, at *36-37 n.16 (N.D. Cal. Jan. 26, 2021).

has incurred and will continue to incur if an injunction is not entered. A showing that there is no adequate remedy at law "is satisfied where the record contains no assurance against defendant's continued violation" of a plaintiff's rights. *Montblanc Simplo GMBH v. Colibri Corp.*, 692 F. Supp. 2d 245, 259 (E.D.N.Y. 2010). When a default judgment is entered, "[a] court may infer from a defendant's default that it is willing to or may continue its infringement." *Pearson Educ., Inc. v. Vegara,* No. 09-cv-6832 (JGK)(KNF), 2010 U.S. Dist. LEXIS 101597, at *12 (S.D.N.Y. Sept. 27, 2010) (internal citations omitted), adopted by, Order at Dkt. 21 (S.D.N.Y. May 11, 2011). As discussed above, Defendants' failure to participate in this action emphasizes that it has no intention of ceasing its wrongful conduct, namely continued infringement and counterfeiting of Plaintiff's Mattel Marks and Barbie Marks through the sale of substandard Counterfeit Products. Since Plaintiff demonstrated a credible threat of future infringement and cannot be compensated properly with monetary relief alone, it respectfully submits that the requested injunction is necessary to fully redress the irreparable injury that they have suffered due to Defendants' illegal and infringing actions. *Hounddog Prods., L.L.C. v. Empire Film Group, Inc.*, 826 F. Supp. 2d 619, 633 (S.D.N.Y. 2011) ("Given the significant threat of future infringement, Plaintiff cannot be compensated with monetary relief alone.").

Further, the balance of hardships unquestionably and overwhelmingly favors Plaintiff since it has suffered and will continue to suffer irreparable harm to its business, profits, goodwill and reputation as a result of Defendants' willful and knowing sales of Counterfeit Products. (Moore Dec., ¶ 33). Additionally, the public interest is clearly served by a permanent injunction, as "the public has an interest in not being deceived – in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010) (granting motion to enjoin

defendant from further trademark violations); *see also Montblanc*, 692 F. Supp. 2d at 259. Here, the public has an interest in being able to rely on the high quality of the Mattel Products bearing the Mattel Marks and Barbie Marks.

### c.  Defendants Willfully Infringed Plaintiff's Mattel Marks And Barbie Marks

Since Defendants are in default, no further analysis is required into willfulness because, and axiomatically, infringement is deemed willful "[b]y virtue of the default[.]" *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003). Nevertheless, Plaintiff respectfully submits that Defendants unequivocally engaged in willful counterfeiting for the reasons set forth below.

The standard for willfulness is whether the defendant had knowledge that his or her conduct represented infringement or recklessly disregarded the possibility. *Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 599-600 (S.D.N.Y. 2010) (citing *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999); *see Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt.*, No. 04-cv-2293 (JFB), 2007 U.S. Dist. LEXIS 1404, 2007 WL 74304, at *11 (E.D.N.Y. Jan. 8, 2007) (applying the willfulness standard in *Kepner-Tregoe* to claims brought under the Lanham Act). Such knowledge may be actual or constructive and may be inferred from defendant's conduct rather than proven directly. *See Ideavillage Prods. Corp. v. Aarhus*, No. 1:18-cv-02739 (JGK) (SDA), 2019 U.S. Dist. LEXIS 78914, at *13 (S.D.N.Y. May 7, 2019) (*citing N.A.S. Imp. Corp. v. Chenson Enters.*, 968 F.2d 250, 252 (2d Cir. 1992) (holding that for "the purpose of awarding enhanced statutory damages," the knowledge component of willfulness "need not be proven directly but may be inferred from the defendant's conduct.")). First, in the instant action, the Counterfeit Products contain marks that are identical to Plaintiff's Mattel Marks and Barbie Marks. (*See* Complaint, Exs. C, D) *See also Coach, Inc. v. Melendez*, No. 10-cv-6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842, at *12-13 (S.D.N.Y.

Sep. 2, 2011) ("Because the marks used by defendants on their products are virtually identical to the Coach Registered Trademarks, the conclusion is inescapable that defendants' infringement and counterfeiting is intentional.").  Second, the undisputed evidence demonstrates that none of the Counterfeit Products sold by Defendants were purchased from Plaintiff. (Moore Dec., ¶¶ 35-36); *see also Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995) (finding defendants to have acted willfully due in part to their failure to take any measures to verify the authenticity of the infringing product); *Gucci Am., Inc., v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 521 (S.D.N.Y. 2004) ("'Selling products acquired outside the customary chain of retail distribution and without the usual authenticating documentation' is a 'high risk business.'") (quoting *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 245 (3d Cir. 2003)) (internal quotation marks omitted).  Thus, the uncontradicted evidence demonstrates that Defendants unequivocally engaged in willful counterfeiting activities. *See* Complaint, Exs. C, D.

Where, as here, a defendant defaults, "all well-pled factual allegations of the complaint, except those relating to damages, are accepted as true and all reasonable inferences are drawn in favor the plaintiff. *See, e.g., City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an 'ancient common law axiom' that a defendant who defaults thereby admits all 'wellpleaded' factual allegations contained in the complaint.") (*quoting Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004)). That said, a court "must still satisfy itself that the plaintiff has established a sound legal basis upon which liability may be imposed." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 373 (E.D.N.Y. 2012) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)); *accord Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) ("[A district court] is also required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law[.]")

In order to establish a claim for either trademark counterfeiting or infringement, courts ask whether a trademark "is entitled to protection" and, if so, "whether use of the allegedly infringing mark is likely to cause consumer confusion as to the origin or sponsorship of the products to which it is attached." *Cross Commerce Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 168 (2d Cir. 2016).

With respect to the first element, Plaintiff has pleaded and demonstrated through a declaration from Plaintiff's Associate General Counsel and Senior Director of Trademarks and Copyrights that Mattel is the owner of all rights, title and interest to the Mattel Marks and Barbie Marks that the Defendants allegedly infringed (Moore Dec., ¶ 16), including the certificates of registrations for the Mattel Marks and Barbie Marks. *Id*. at ¶¶ 17-18; *see Lane Capital Mgmt., Inc. v. Lane Capital Mgmt, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) (noting that "[a] certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid (*i.e.* protectible)"). Moreover, the Mattel has never authorized Defendants to use the Mattel Marks and Barbie Marks and/or sell Counterfeit Products. (Moore Dec., ¶ 39).

With respect to the second element, since Defendants are dealing in Counterfeit Products, "the standard for consumer confusion is easily satisfied in the case of counterfeits because counterfeits, by their very nature, cause confusion." *Off-White LLC v. 5HK5584*, No. 19-cv-672 (RA) (JLC), 2020 U.S. Dist. LEXIS 58926, at *14 (S.D.N.Y. Apr. 3, 2020) (*quoting Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 433 (S.D.N.Y. 2012) (internal quotation marks omitted).

### d. Plaintiff is Entitled to Heightened Statutory Damages

The Lanham Act allows a plaintiff to elect either statutory damages or actual damages for willful infringement. *See* 15 U.S.C. § 1117(c). The Lanham Act provides that, at any time before final judgment is rendered, a trademark owner may elect to recover an award of statutory damages,

rather than actual damages, for the use of a counterfeit mark in connection with goods or services in the amount of: (1) "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or (2) if the use of the counterfeit mark is found to be willful, up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c).

Congress enacted the statutory damages remedy in trademark counterfeiting cases because evidence of a counterfeiter's profits is almost impossible to ascertain since "records are frequently nonexistent, inadequate, or deceptively kept." *Gucci Am., Inc.*, 315 F Supp. 2d at 520. *See also Coach, Inc. v. Weng*, 2014 U.S. Dist. LEXIS 79005, at *41 (S.D.N.Y. June 7, 2014) ("Section 1117(c) of the Lanham Act was created to give victims of trademark infringement and unfair competition an avenue for recovering damages when a defendant hides, alters, or destroys business records."). Given Defendants' propensity to conceal its identity, disappear and destroy or hide any evidence or records of its counterfeiting and infringing actions, and that to date, Defendants have failed to comply with all of the deadlines set forth in the Case Management Plan and the August 17, 2022 Order, Plaintiff cannot ascertain Defendants' actual profits. (Ioannou Dec., ¶¶ 4, 20; Futterman Aff., ¶¶ 24-25; 28-29). Simply put, this case presents the exact circumstances that Congress envisioned in its enactment of Section 1117(c).

In making a determination of appropriate statutory damages awards, courts consider the following factors to determine an appropriate statutory damages award under Section 1117(c) of the Lanham Act: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright [or trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a

defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." *Gucci Am., Inc.*, 315 F. Supp. 2d at 520 (quoting *Fitzgerald Publ'g Co., Inc. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986)) (internal quotation marks omitted); *Louis Vuitton Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 504 (S.D.N.Y. 2009) ("In the absence of any guidelines for determining the appropriate award in a case involving willful trademark violations, courts often have looked for guidance to the better developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for willful copyright infringement.").

With respect to the first, second and sixth factors, Defendants' propensity to secrete evidence pertaining to sales and profits – along with their failure to comply with the Court's orders – has made it impossible to determine Defendants' profits, quantify any expenses that Defendants may have saved by infringing Plaintiff's Mattel Marks and Barbie Marks or assess any revenues lost by Plaintiff as a result of Defendants' infringing and counterfeiting activities. (Ioannou Dec., ¶¶ 4, 20; Futterman Aff., ¶¶ 33-36).  Thus, these three factors support a higher statutory damage award for Plaintiff.  *See AW Licensing, LLC v. Bao*, 15-CV-1373-KBF, 2016 U.S. Dist. LEXIS 101150, at *7 (S.D.N.Y. Aug. 2, 2016) ("[C]ourts have supported an inference of a broad scope of operations in cases dealing specifically with websites that ship and sell to a wide geographic range," like Defendant's Website in this Action).

The third factor – the value of Plaintiff's Mattel Marks and Barbie Marks– also weighs in favor of increased statutory damage awards for Plaintiff against Defendants.  Here, Plaintiff established that the Mattel Products achieved near universal recognition and success as a result of Plaintiff's efforts in building up and developing consumer recognition, awareness and goodwill in

its Mattel Marks and Barbie Marks. (Moore Dec., ¶ 30).  By virtue of the foregoing, Plaintiff amassed enormous value in the Mattel Marks and Barbie Marks, and the Mattel Marks and Barbie Marks identify Plaintiff as the exclusive source of the Mattel Products to which the Mattel Marks and Barbie Marks are applied.  Therefore, the remaining factors also support significant statutory damages awards against Defendants.  Particularly where, as here, Defendants acted willfully, "a statutory award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others." *Louis Vuitton Malletier*, 648 F. Supp. 2d at 504.

Plaintiff seeks statutory damages awards against Defendants.[8]  As discussed *supra,* since Defendants have defaulted, and therefore have not provided complete evidence of their purchases or sales of Counterfeit Products, the amount of Defendants' profits are unknown. (Futterman Aff., ¶¶ 33-36). Therefore, Plaintiff is deprived of the ability to prove a specific amount of actual damages and instead has been left with no choice but to seek an award of statutory damages. Plaintiff and its counsel have confirmed through visual inspection of Defendants' Websites, as well as inspection of Counterfeit Products purchased from Defendants' Websites, that Defendants are, among other things, using identical copies of the Mattel Marks and Barbie Marks on or in connection with the Counterfeit Products and/or Defendants' Websites.  (Moore Dec., ¶¶ 35-36, Ex. E; Ioannou Dec., ¶¶ 5-7-11, Exs. A-B).  More specifically, seven (7) Barbie Marks and one (1) Mattel Mark are at issue.[9]  Plaintiff has evidence that Defendants have used the Mattel Marks

---

[8] Plaintiff respectfully submits that it is entitled to post-judgment interest calculated pursuant to the statutory rate. "Interest shall be allowed on any money judgment in a civil case recovered in a district court."  28 U.S.C. § 1961(a).

[9] U.S. Reg. Nos.: 689,055 for "BARBIE" for a variety of goods in Class 28; 2,678,386 for "BARBIE" for a variety of goods in Classes 3, 6, 8, 9, 11, 12, 14, 16, 18, 20, 21, 24, 25, 26, 27, 28 and 30; 2,087,842 for "𝓑𝓪𝓻𝓫𝓲𝓮" for a variety of goods in Class 28; 2,639,971 for "𝓑𝓪𝓻𝓫𝓲𝓮" for a variety of goods in Class 25 and 28; 774,892 for "SKIPPER" for a variety of goods in Class 28; 3,702,525 for "FASHIONISTAS" for goods in Class 28; 5,233,292 for "BARBIE DREAMTOPIA" for a variety of goods in Class 28; and 4,106,374 for "MATTEL" for "computerized online ordering

and Barbie Marks on Defendants' Websites, as well on or in connection with Counterfeit Products (*see* Moore Dec., ¶¶ 35-36, Ex. E) (i.e., goods and services in, at the very least, Classes 28 and 35).[10]

The Lanham Act provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just". *See* 15 U.S.C. § 1117(c)). Here, Defendants used seven (7) of Plaintiff's Barbie Marks on or in connection with the sale of toy products (i.e., goods in Class 28) and one (1) Mattel Mark on or in connection with online retail services (i.e., services in Class 35). Plaintiff respectfully requests an award of $250,000.00 per counterfeit mark per type of goods or services sold (i.e., seven (7) counterfeit marks for goods in Class 28, and one (1) counterfeit mark for services in Class 35 or, in other words, $250,000.00 multiplied by eight).[11] Thus, Plaintiff respectfully asks that the Court award it the reasonable total amount of Two Million Dollars ($2,000,000.00) against Defendants, jointly and severally, plus post-judgment interest, calculated pursuant to the statutory rate. As further addressed *infra*, Plaintiff's request for $2,000,000.00 is within the range of awards granted by courts in this district.

Generally, "[t]he lack of information about any of the defendants' sales and profits, and the suspect nature of any information that was provided, make statutory damages particularly appropriate for this case." *Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 (KMW) (RLE), 2006 U.S. Dist. LEXIS 76543, at *6 (S.D.N.Y. Feb. 27, 2006). Since "the amount of defendants' likely profits

---

services in the field of toys, games and playthings, electronic commerce services, namely, providing information about products via telecommunication networks for advertising and sales purposes." in Class 35. (Moore Dec., ¶ 17, Ex. C).

[10] For example, Ex. C to the Moore Dec. demonstrates, among other things, Defendants' use of the Mattel Marks and Barbie Marks predominantly thereon in connection with the Counterfeit Products, and in Defendants' Infringing Domain Names.

[11] *See Yahoo! Inc. v. XYZ Cos.*, 872 F. Supp. 2d 300 (S.D.N.Y. 2011) (wherein this Court found that since the Yahoo! standard character mark was the subject of five trademark registrations, the defendants counterfeited five registered marks for the purposes of calculating statutory damages).

from their infringement, the possibility of deterrence, and the need for redress of wrongful conduct are appropriate factors to consider," Plaintiff respectfully submits that Defendants' willful violations of the Lanham Act make its request for damages appropriate. *Nike, Inc*., 2006 U.S. Dist. LEXIS 76543 at *6-7. "Moreover, this Court has 'wide discretion' in 'setting the amount of statutory damages.'" *Ontel Prods. Corp. v. Airbrushpainting Makeup Store a/k/a Airbrushespainting et al*., 17-cv-871 (KBF), 2017 Dist. LEXIS 221489, at *3 (S.D.N.Y. June 29, 2017) citing *Fitzgerald Publ'g Co., Inc.*, 807 F.2d at 1116.

In this district, even where there was no concrete information about the defendants' actual sales figures and profits, Courts have not hesitated to award higher statutory damages in favor of plaintiffs. *See, e.g., Pitbull Prods., Inc. v. Universal Netmedia, Inc.,* No. 07 Civ. 1784 (RMR) (GWG), 2007 U.S. Dist. LEXIS 82201, at *10–*11(S.D.N.Y. Nov. 7, 2007) (awarding plaintiff $250,000.00 per mark for two marks where defendant's conduct was willful and defendant's default "left the Court with no information as to any of the factors relating to the defendants' circumstances," and noting that "Courts have awarded similar damages in other cases in which there was little information as to the defendants' infringement"); *Rodgers v. Anderson*, No. 04 Civ. 1149 (RJH) (AJP), 2005 U.S. Dist. LEXIS 7054, at *8 (S.D.N.Y. Apr. 26, 2005) (awarding $250,000.00 and noting that the amount "is consistent with (indeed, lower than) awards in similar cases," and citing cases); *see also All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 624-25 (S.D.N.Y. 2011) (collecting cases awarding between $25,000.00 and $250,000.00 per mark). Awards of $1,000,000.00 and higher have been granted to plaintiffs in similar matters before this Court. *See, e.g., Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 584 (S.D.N.Y. 2002) (awarding $1,000,000 in statutory damages for defendant's infringement of six Louis Vuitton marks, where the record contained no evidence of defendants' sales, nor the

number of hits the website received); *Rolex Watch U.S.A., Inc. v. Brown*, No. 01 Civ. 9155 (JGK) (AJP), 2002 U.S. Dist. LEXIS 10054, at *8-9 (S.D.N.Y. June 5, 2002) (where the Defendant sold 10,000 counterfeit watches, the Court found $1,000,000 in statutory damages to be appropriate and sufficient).  Further, Plaintiff respectfully submits that the statutory damages requested are the minimum recoverable damages in this case.[12]

### e. Defendants Engaged in Cybersquatting Through the Registration and Use of the Infringing Domains

In order to prevail on a claim for cybersquatting under 15 U.S.C. § 1125(d)(1)(A), a plaintiff must demonstrate that "(1) its trademark is either distinctive or famous, (2) the domain name is identical or confusingly similar to the trademark, and (3) the defendant acted with a bad-faith intent to profit from the trademark."  *Salvatore Ferragamo S.p.A. v. Does 1-56*, No. 18-cv-12069 (JPO), 2020 U.S. Dist. LEXIS 27582, 2020 WL 774237, at *3 (S.D.N.Y. Feb. 18, 2020); (citing *Sporty's Farm L.L.C. v. Sportsman's Market, Inc*., 202 F.3d 489, 495 (2d Cir. 2000).

First, as set forth in the Complaint, Plaintiff has amassed a substantial amount of success in its Mattel Products from its consumers and the word-of-mouth buzz that its consumers have generated, which in turn, have prominently placed the Mattel Marks and Barbie Marks in the minds of the public. (Complaint, ¶¶ 21-25). Plaintiff has acquired a valuable reputation and goodwill among the public from such associations, and as a result, has received fame in its Mattel Marks and Barbie Marks. *Id*.

---

[12] *See, e.g., Nike, Inc. v. Wu,* 349 F. Supp. 3d 310 (S.D.N.Y. 2018); *Tiffany (NJ) LLC v. Forbse*, No. 11-cv-4976 (NRB), 2015 US Dist. LEXIS 129647, at *10-11 (S.D.N.Y. Sep. 22, 2015); *Gucci Am., Inc. v. Curveal Fashion*, No. 09 Civ. 8458 (RJS), 2010 U.S. Dist. LEXIS 5831, at *15 (S.D.N.Y. Jan. 20, 2010); *see also Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 427-428  (S.D.N.Y. 2018); *Mattel, Inc. v. 1994_honeymoon, et al.*, No. 18-cv-10427-KPF, Dkt. 59 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. Aaron's Fashion Store, et al.*, No. 18-cv-10437-KPF, Dkt. 79 (S.D.N.Y. Mar. 27, 2019); *Mattel, Inc. v. 276470, et al.*, No. 18-cv-10440-KPF, Dkt. 62 (S.D.N.Y. Mar. 27, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.,* No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.,* No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018).

Second, the Infringing Domain Names, namely, www.dreambarbiedoll.com, www.dreambarbiedolls.com and www.mattelblackfriday.com contain "Mattel" or "Barbie" making them identical to one of Plaintiff's Mattel Marks and/or Barbie Marks. (Moore., ¶ 38; Complaint, Ex. E). *See also Ideavillage Prods. Corp. v. Liuzhou Weimao Mobile Access. Co.*, No. 20-cv-4997-LTS, 2021 U.S. Dist. LEXIS 153952, at *9 (S.D.N.Y. Aug. 16, 2021). Further, although Defendants' Infringing Domain Names contain additional words such as "dream", "doll" and "black Friday" this Court has held that such words "do not indicate a separation from the mark, [r]ather, including…'shop' implicate[s] the domain as an electronic avenue through which products bearing Plaintiff's marks can be purchased." *Id.*

Finally, Defendants registered and used the Infringing Domain Names with the bad faith intent to profit from the Mattel Marks and Barbie Marks, namely by using the Infringing Domain Names to host Defendants' Website where Defendants offers for sale and/or sell Counterfeit Products. (Complaint, Ex. D). Accordingly, Plaintiff is entitled to default judgment on its cybersquatting claim.

### f.  Plaintiff is Entitled to a Transfer of the Infringing Domain Names

Pursuant to the Anticybersquatting Consumer Protection Act, "a court may order . . . the transfer of the domain name to the owner of the mark." 15 U.S.C. § 1125(d)(1)(C). Transfer of a domain name is particularly appropriate if defendants have expressed a willingness to continue to use the infringing domain name. *See Ideavillage Prods. Corp., 2021 U.S. Dist. LEXIS 153952, at *20* (citing *Mintz v. Mktg. Cohorts, LLC*, No. 18-CV-4159, 2019 U.S. Dist. LEXIS 124374, 2019 WL 3337896, at * 8 (E.D.N.Y. July 25, 2019); *Prime Publishers, Inc. v. American-Republican, Inc.*, 160 F. Supp. 2d 266, 281-82 (D. Conn. 2001) (granting request for transfer of a domain name)). Here, Because Defendants used one or more of Plaintiff's Mattel Marks and Barbie Marks

in their domain names to facilitate the sale of Counterfeit Products, Defendants are likely to continue using the Infringing Domain Names absent injunctive relief. *Id.* Accordingly, transfer of the Infringing Domain Names is appropriate. *Id.*

## B. PLAINTIFF IS ENTITLED TO SERVE RESTRAINING NOTICES PURSUANT TO CPLR § 5222 AND TO AN ASSET TURNOVER PURSUANT TO CPLR § 5225

Plaintiff respectfully requests that the Court allow Plaintiff to serve a restraining notice pursuant to CPLR § 5222 as instructed by this Court in cases including *Allstar Marketing Group, LLC v. 158*, No. 19-cv-4101 (GHW), 2019 U.S. Dist. LEXIS 141913 (S.D.N.Y. Aug. 20, 2019) and *WowWee Grp. Ltd. v. Meirly*, No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019).[13] Recently, in *Off-White LLC v. 2017pingan, et al.*, and two related actions,[14] after requesting supplemental briefing on the issue, Judge Failla allowed the plaintiff to serve restraining notices on third-party service provider PayPal pursuant to C.P.L.R. § 5222. 20-cv-5191 (KPF), Dkt. 40 (S.D.N.Y. May 7, 2021).[15]

Plaintiff's requested post-judgment relief can be granted through N.Y. C.P.L.R. § 5222, as incorporated by Fed. R. Civ. P. 69.[16] Pursuant to Rule 69(a), "post-judgment efforts to execute on a money judgment [must] comply with the procedural law of the forum state — unless a federal statute dictates to the contrary. The Lanham Act contains no such instruction. Accordingly, the applicable statute is N.Y. C.P.L.R. § 5225. *Tiffany (NJ) LLC v. Dong*, 2013 U.S. Dist. LEXIS 114986, at *28 (S.D.N.Y. Aug. 9, 2013).

---

[13] *See*, *Dawson v. Krolikowski*, 530 N.Y.S.2d 931, 935 (Sup. Ct. 1988) ("[O]nce a money judgment is entered, restraining notices may be served pursuant to CPLR 5222 in order to prevent the transfer of property." (quotation marks omitted)).

[14] The related actions are *Off-White LLC v. 24 Hours Delivery Store et al*, 20-cv-5194 (KPF) and *Off-White LLC v. A9660, et al.*, 20-cv-5196 (KPF). For ease of reference, Plaintiff will refer to the first filed case (20-cv-5191) only, however, Judge Failla issued the same decision for all three related cases.

[15] Judge Failla reserved decision on the plaintiff's request for a post-judgment asset turnover until after the restraining notices were served. *Id.*

[16] *See e.g. Blue v. Cablevision Sys., N.Y. City Corp.*, No. 00-3836, 2006 U.S. Dist. LEXIS 96449, at *2 n.1 (E.D.N.Y. July 5, 2007).

> Where property is in possession of a judgment debtor, Section 5225 permits a court,[u]pon motion of the judgment creditor, upon notice to the judgment debtor, [and] where it is shown that the judgment debtor is in possession or custody of money or other personal property in which he has an interest, ... [to] order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor and, if the amount to be so paid is insufficient to satisfy the judgment, to deliver any other personal property, or so much of it as is of sufficient value to satisfy the judgment, to a designated sheriff.

*Arrowhead Capital Fin., Ltd. v. Seven Arts Entm't, Inc.*, No. 14 Civ. 6512 (KPF), 2017 U.S. Dist. LEXIS 125068, at *7-8 (S.D.N.Y. Aug. 8, 2017); N.Y. C.P.L.R. § 5225(a).

Pursuant to N.Y. C.P.L.R. §§ 5201-5253, once a defendant is found liable and a money judgment is rendered against a defendant, a New York District Court has the power to restrain the defendant's assets. *Cruz v. TD Bank, N.A.*, 711 F.3d 261, 264 (2d Cir. 2013); *see also Interpool Ltd. v. Patterson*, No. 89 Civ. 8501 (LAK), 1995 U.S. Dist. LEXIS 2920, at *1 (S.D.N.Y. Mar. 13, 1995) (ordering restraint pursuant to C.P.L.R. § 5222, finding that "[a] New York judgment creditor is entitled to a restraining notice on the debtor as a matter of right"). Further, the Second Circuit has affirmed the district court's authority to order a post-judgment injunction on a claim for money damages where the judgment debtor sought to evade payment to the judgment creditor. *See Pashaian v. Eccelston Props., Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996).

Accordingly, C.P.L.R. § 5222, which permits issuance of a restraining notice against the judgment debtor that, with certain exceptions not relevant here, prohibits disposition or transfer of property "until the judgment … is satisfied," allows the post-judgment asset restraint requested by Plaintiff. *See* C.P.L.R. § 5222(b). And where property is not in the possession of a judgment debtor, Section 5225 authorizes a court to compel a nonparty to surrender a judgment debtor's property:

> [u]pon a special proceeding commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other

21

personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee . . . .

N.Y. C.P.L.R. § 5225.

Although the state rule suggests that a special proceeding must be commenced, the Federal Rules of Civil Procedure make no mention of special proceedings. Federal courts in New York have deemed the CPLR special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets. *See id.*; *see also, e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012) (citing *Mitchell v. Lyons Prof'l Servs., Inc.*, 727 F. Supp. 2d 120, 122-23 (E.D.N.Y. 2010) ("Nearly every court in this Circuit to consider the issue has held that parties can bring a motion under [Rule] 69(a), rather than instituting a special proceeding under the New York State law.")) (additional citation omitted); *CSX Transp., Inc. v. Emjay Envtl. Recycling, LTD.*, No. 12-CV-1865, 2016 U.S. Dist. LEXIS 23014, at *3 (E.D.N.Y. Feb. 25, 2016) (noting that the argument that a turnover order must be brought by plenary action "is easily disregarded"); *S.E.C. v. Colonial Inv. Mgmt. LLC*, No. 07 Civ. 8849 (PKC), 2010 U.S. Dist. LEXIS 108063, at *2 (S.D.N.Y. Oct. 6, 2010).

Section 5201 describes the assets that are subject to enforcement under New York law, and are therefore available to judgment creditors' seeking to collect under § 5225. *Arrowhead Capital Fin., Ltd.*, 2017 U.S. Dist. LEXIS 125068, at *8-9; *see also* N.Y. C.P.L.R. § 5201. According to this provision, "[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested, unless it is exempt from application to the satisfaction of the judgment." *Id.* at 8*; see also* C.P.L.R. § 5201(b). Such property need not be located in New York; "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property" if the

defendant "is a judgment debtor or a garnishee." *Id.* at 8 (citing *Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009)).  Finally, no third parties have raised any issue regarding Plaintiff's requests either in this case or when previously ordered by judges in this district in similar cases.[17] In the event this Court grants Plaintiff's motion, and after the Court enters its final judgment, Plaintiff will promptly serve restraining notices, pursuant to CPLR § 5222, on Defendants,[18] Third Party Service Providers and Financial Institutions, and upon restraint, would move for an asset turnover pursuant to CPLR § 5225.[19]

## V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion for Default Judgment and a Permanent Injunction in its entirety.


Dated: September 28, 2022                    Respectfully submitted,

                                             EPSTEIN DRANGEL LLP

                                             BY:    /s/ Danielle S. Futterman
                                                    Danielle S. Futterman (DY 4228)

---

[17] *See, e.g., Off-White v. ^_^Warm House^_^ STORE, et al.*, No. 17-cv-8872-GBD-GWG, Dkt. 85 (S.D.N.Y. Jan. 17, 2019); *Tapestry, Inc., et al. v. baoqingtianff, et al.*, No. 18-cv-7650-PAE, Dkt. 34 (S.D.N.Y. Jan. 8, 2019); *Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR, Dkt. 47 (S.D.N.Y. Dec. 17, 2018); *Ideavillage Prods. Corp. v. 711 Market, et al.*, No. 18-cv-7832-JMF, Dkt. 61 (S.D.N.Y. Dec. 12, 2018); *Wow Virtual Reality, Inc. v. BIENBEST, et al.*, No. 18-cv-3305-VEC, Dkts. 210-289, 302 (S.D.N.Y. Dec. 5, 2018); *Moose Toys Pty Ltd., et al. v. 963, et al.*, No. 18-cv-2187-VEC, Dkts. 160-251, 257 (S.D.N.Y. Nov. 30, 2018).

[18] Pursuant to Fed. R. Civ. P. 62(a) "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 30 days have passed after its entry, unless the court orders otherwise."  Accordingly, Plaintiff requests that the automatic 30-day stay be dissolved to prevent Defendant from potentially hiding its assets during this time.  *See Allstar*, 2019 U.S. Dist. LEXIS 141913 at *11 FN 6 ("if a plaintiff is concerned that defendants might attempt to conceal assets during the pendency of the automatic stay, it should include a dissolution of that stay as part of the relief requested in its proposed judgment.").

[19] CPLR § 5225 "authorizes the commencement of a special proceeding or motion practice against the person in possession of that property that may ultimately result in the transfer of the property after finding personal jurisdiction over the garnishee and a hearing." *Id.*  Although the state rule suggests that a special proceeding must be commenced, the Federal Rules of Civil Procedure make no mention of special proceedings, and Federal courts in New York have deemed the special proceeding requirement satisfied when a plaintiff proceeds by complaint or motion against the third party holding a judgment debtor's assets. *See id.*; *see also, e.g., Northern Mariana Islands v. Millard*, 845 F. Supp. 2d 579, 581 (S.D.N.Y. 2012).

dfutterman@ipcounselors.com
Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:    (212) 292-5390
Facsimile:    (212) 292-5391
*Attorneys for Plaintiff*
*Mattel, Inc.*

24